**MANUFACTURERS ASSOCIATION OF TRI-COUNTY, et al., Plaintiffs**

v.

**James W. KNEPPER, Jr., et al., Defendants**

and

**Pennsylvania American Federation of Labor—Congress of Industrial Organizations, et al., Intervenors**

**PENNSYLVANIA FOUNDRYMEN'S ASSOCIATION, et al., Plaintiffs**

v.

**James W. KNEPPER, Jr., et al., Defendants**

and

**Pennsylvania American Federation of Labor—Congress of Industrial Organizations, et al., Intervenors**

Civ. A. No. 85–1027.

United States District Court, M.D. Pennsylvania.

Dec. 12, 1985.

Robert W. Thomson, Debra M. Coulson, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Robert B. Hoffman, Reed, Smith, Shaw & McClay, Donald A. Tortorice, Arthur K. Hoffman, Duane, Morris & Heckscher, Harrisburg, Pa., for plaintiffs.

Delancey W. Davis, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

Stephen C. Richman, Markowitz & Richman, Philadelphia, Pa., for International Union, UAW.

Theodore M. Lieberman, Philadelphia, Pa., for intervenor.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Plaintiffs, defendants and intervenors have filed cross motions for summary judgment. Plaintiffs are certain manufacturers, manufacturing associations and non-manufacturers doing business in Pennsylvania. Defendants are James W. Knepper, Jr., Secretary of the Department of Labor

and Industry, Herbert Thieme, Deputy Secretary for Administration of the Department of Labor and Industry, the Pennsylvania Department of Labor and Industry, and the Commonwealth of Pennsylvania. Intervenors are the Pennsylvania American Federation of Labor-Congress of Industrial Organizations ("AFL–CIO"). The International Union (also known as United Auto Workers) has also filed an *amicus curiae* brief. This consolidated action[1] arises from the enactment of the Pennsylvania Worker and Community Right to Know Act, P.L. 734 No. 159, 35 P.S. § 7301 *et seq.* ("Right to Know Act") which establishes a statewide program for communicating information concerning hazardous substance to employees and the general public. Plaintiff's primary contention is that, based upon the recent decision of *New Jersey State Chamber of Commerce v. Hughey,* 774 F.2d 587 (3d Cir.1985), the Right to Know Act is preempted by § 18 of the Occupational Health and Safety Act ("OSH Act") (29 U.S.C. § 667), and the Hazard Communication Standard ("The Standard") (29 C.F.R. § 1910.1200) as it applies, (1) to employers who are included within the Standard Industrial Classification ("SIC") Codes 20–39 and (2) as it applies to employers outside SIC Codes 20–39.[2] In accordance with *Hughey* defendants and intervenors acknowledge that certain provisions of the Right to Know Act are preempted, but nevertheless maintain that the remainder of the Right to Know Act should be enforced, and that the preempted sections of the Act can be severed. In addition to their preemption argument plaintiffs also assert that the Right to Know Act imposes an excessive burden on interstate commerce in violation of the Commerce Clause of the Federal Constitution and deprives plaintiffs of their property rights in trade secrets and confidential information without just compensation.

For the reasons set forth below, we conclude that the Right to Know Act is entirely preempted by federal law to the extent it requires employers in the manufacturing sector to identify and disclose information concerning workplace hazards. The Right to Know Act is not preempted as it applies to employers in the non-manufacturing sector, nor as it requires all employers to disclose information relating to environmental hazards, except for the labeling requirement in the manufacturing sector. We also conclude that the Right to Know Act does not violate the Commerce Clause or constitute a taking without just compensation.

## II. *Background.*

### A. *The Pennsylvania Worker and Community Right to Know Act.*

On October 5, 1984 the Governor of Pennsylvania signed the Right to Know Act into law, to become effective on October 5, 1985.[3] The purpose of the Act *inter alia* is "to ensure that employees, their families and the general public be given current information concerning the nature of the hazardous substances with which they may come in contact and full information concerning the health hazards of these hazardous substances." 35 P.S. § 7301 (Preamble to the Act). It establishes a comprehensive statutory scheme for (1) identifying and (2) communicating to employees, emergency response agencies, health care professionals, and the general public information concerning hazardous chemicals employed in the workplace. These objectives are accomplished primarily through the following procedures.

---

1. Upon motion of the parties, Civil Action No. 85–1028 was consolidated into Civil Action No. 85–1027.

2. The Standard consists of regulations adopted by OSHA pursuant to the OSH Act. SIC Codes 20–39 consist primarily of categories of manufacturers as set forth in the Standard Industrial Classification Manual published by the U.S. Office of Management and Budget. For purposes of this Memorandum we will refer to SIC Codes 20–39 as the manufacturing sector.

3. On August 28, 1985 we stayed the implementation and enforcement of the Act until December 4, 1985. On December 3, 1985 we again stayed enforcement of the Act until this decision is rendered.

Within 180 days of the effective date of the Right to Know Act (October 5, 1985) the Pennsylvania Department of Labor and Industry is required to compile a list of hazardous substances and designate those substances which are considered to be "special" or "environmental" hazards. 35 P.S. § 7303. Every employer is required to complete a hazardous substance survey form ("HSSF") for each workplace, listing the designated hazardous substances which were present during the past year. 35 P.S. § 7303(e). This form must be retained on file at the workplace and updated every two years. *Id.* The employer is also required, upon the written request of any person, to complete an environmental hazard survey ("EHS") for the workplace which discloses "those [designated] substances emitted, discharged or disposed of from the workplace." 35 P.S. § 3703(g).

The primary burden of disclosing hazardous substances falls upon manufacturers and suppliers of chemicals. The Right to Know Act provides that "every supplier, as a condition of doing business in this Commonwealth, shall ensure that the container of any chemical which is delivered to a point within this Commonwealth or which is produced within this Commonwealth is clearly labeled in the manner required by section 6." 35 P.S. § 7304(a)(footnote omitted). Section 6, in turn specifies the information that must be disclosed. 35 P.S. § 7306(a). The Right to Know Act further provides that within two (2) years all containers, used by entities covered by the Act, regardless of whether they contain hazardous substances, must be labeled. 35 P.S. § 7306(a)(4). In addition, employers are required to place labels at or near all pipeline ports. 35 P.S. 7306(c).

Similarly, manufacturers, importers and suppliers must prepare a material safety data sheet ("MSDS") for each designated "hazardous substance or hazardous mixture they produce or import, and shall ensure that all purchasers of hazardous substances or hazardous mixtures are provided with an appropriate MSDS...." 35 P.S. § 7304(b). The Department of Labor and Industry must also be supplied with a copy of each MSDS. The MSDS must incorporate certain information, including the chemical name, its physical characteristics, and its health hazards. *Id.*

The Right to Know Act also permits employers, manufacturers, etc., to withhold the identity of a chemical substance as a trade secret. 35 P.S. § 7311. This protection is not absolute and the claimant must satisfy the criteria in § 7311(a). In no case is the claimant permitted to withhold a chemical's identity from a treating physician or nurse. The claimant may, however, require the physician or nurse to sign a confidentiality agreement. 35 P.S. § 7311(b).

Finally, employers are obligated to disclose the information required by the Right to Know Act to (1) employees and (2) the community. Employers must post in the workplace a listing of all designated hazardous substances present and make available in the work area a MSDS for each hazardous substance to which the employees may be exposed. 35 P.S. § 7307. Employers are also required to provide, at least annually, educational and training programs for employees exposed to hazardous substances. 35 P.S. § 7308. With respect to public disclosure, employers must make available to the community, including local police, fire and emergency response personnel, copies of HSSF's, EHS's and MSDS's upon demand. 35 P.S. § 7305.

### B. *The Hazard Communication Standard.*

In 1970 Congress enacted the Occupational Safety and Health Act (OSH Act), 29 U.S.C. §§ 651 *et seq.* "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). Pursuant to § 655 of the OSH Act, the Secretary of Labor was given the authority to promulgate standards to implement its purposes, and on November 23, 1983, the Occupational Safety and Health Agency ("OSHA") published the final Hazard Communication Standard. The stated purpose of the Stan-

dard is to "insure that the hazards of all chemicals produced or imported by chemical manufacturers or importers are evaluated, and that information concerning their hazards is transmitted to affected employees within the manufacturing sector." 29 C.F.R. § 1910.1200(a)(1). By its terms it is applicable to all employers in SIC Codes 20–39.

The Standard is practically duplicative of the Right to Know Act and likewise can be broken down in two parts. First, chemical manufacturers and importers must assess the hazards of chemicals which they produce or import. Second employers must communicate the hazards to their employees by means of a hazardous communication program which "includes at least the mandated container labeling, material safety data sheets ("MSDS"), and an employee training program." 48 Fed.Reg. 53,336.

The MSDS is the principle instrumentality for transmitting hazard information. 48 Fed.Reg. 53,305. Chemical manufacturers and importers must develop a MSDS for each substance they identify as hazardous which includes the name(s) of the chemical, its physical and chemical characteristics and its health and safety characteristics. 29 C.F.R. § 1910.1200(g). The MSDS's must also be readily available to employees. In addition, manufacturers, importers, and distributors must ensure that each container of hazardous chemicals leaving the workplace is appropriately labeled and all employers must ensure that containers utilized in the workplace are labeled. 29 C.F.R. § 1910.1200(f). The hazard communication program must also include an employee training program designed to provide employees with the skills necessary to detect hazardous conditions and to take appropriate protective measures. 29 C.F.R. § 1910.1200(h)(2).

Finally, the Standard provides for trade secret protection. 29 C.F.R. § 1910.1200(1). The employer may withhold the identity of a chemical substance if it satisfies the requirements contained in 29 C.F.R. § 1910.1200(i)(1). Notwithstanding this provision, employers must reveal the identity of a substance to a treating physician or nurse if they determine that a medical emergency exists. 29 C.F.R. § 1910.1200(i)(2). Under certain circumstances, the employer may require a written statement of need and confidentiality agreement. *Id.*

## III. *Discussion.*

### A. *Application to Employers covered by the SIC Codes 20–39.*

■ The United States Supreme Court recently set forth the standards for determining preemption of state law in *Hillsborough County v. Automated Medical Laboratories, Inc.*, —— U.S. ——, ——, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985) as follows:

■ It is a familiar and well-established principle that the Supremacy Clause, US Const, Art VI, cl 2, invalidates state laws that "interfere with, or are contrary to" federal law. *Gibbons v Ogden*, 9 Wheat 1, 211 [22 U.S. 1], 6 L Ed 23 (1824) (Marshall, C.J.). Under the Supremacy Clause, federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. *Jones v Rath Packing Co.*, 430 US 519, 525, 51 L Ed 2d 604, 97 S Ct 1305 [1309] (1977). In the absence of express pre-emptive language, Congress' intent to preempt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. *Rice v Santa Fe Elevator Corp.*, 331 US 218, 230, 91 L Ed 1447, 67 S Ct 1146 [1152] (1947). Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Ibid.; see *Hines v Davidowitz*, 312 US 52, 85 L Ed 581, 61 S Ct 399 (1941).

■ Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 US 132, 142–143, 10 L Ed 2d 248, 83 S Ct 1210 [1217] (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz,* supra [312 U.S.], at 67, 85 L Ed 581, 61 S Ct 399 [at 404]. See generally *Capital Cities Cable, Inc. v. Crisp,* 467 US 691, ——, 81 L Ed 2d 580, 104 S Ct 2694 (1984).

In addition, state laws can be preempted by federal regulations as well as by federal statutes. Id. at ——, 105 S.Ct. at 2375, 85 L.Ed.2d at 721; *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984).

In the present case, Congress has expressly provided for the preemption of state laws in § 18 of the OSH Act which provides in pertinent part:

> (a) Assertion of State standards in absence of applicable Federal standards Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title.[4]

OSHA has also expressed its intent to preempt state law in this area. The OSHA Standard states that it "is intended to address comprehensively the issue of evaluating and communicating chemical hazards to *employees in the manufacturing sector,*

and to preempt any state law pertaining to this subject." 29 C.F.R. 1910.1200(a)(2) (emphasis added).

In *New Jersey State Chamber of Commerce v. Hughey, supra,* the Third Circuit recently examined the New Jersey Worker and Community Right to Know Act, N.J. S.A. 34:5A–1, *et seq.,* ("New Jersey Right to Know Act"), a statute whose purpose and framework is substantially identical to the Pennsylvania Right to Know Act. In *Hughey* the plaintiff contended that the entire statute was expressly preempted by section 18 of the federal OSH Act. The court rejected plaintiff's contention on the grounds that section 18 was intended to preempt only state laws which sought to regulate employee health and safety. *Hughey,* at 592–593. Instead, applying the principles of implied preemption, the court reviewed each section of the New Jersey Right to Know Act to determine whether "Congress would have intended to preempt such a provision." *Hughey,* at 593. More importantly for our purposes, the court developed the following standards for determining preemption:

> A section should be held to be preempted, therefore, only to the extent that: 1) it is expressly preempted because it regulates communication of hazards to employees in the manufacturing sector; 2) it is impossible to comply both with state law and with federal law; or 3) the provision serves as an obstacle to the accomplishment of Congress' object in the OSH Act to promote safe and healthful working conditions.

*Id.* at 594.

With these principles in mind, we will examine each disputed section of the Pennsylvania Right to Know Act.[5]

---

4. Subsection (b) provides, however, that:
   Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.
   29 U.S.C. § 667(b).

Pennsylvania has not submitted such a plan.

5. The following sections presented no question of preemption:
   | 7301 | Short Title |
   | 7302 | Definitions |
   | 7303(a) | Hazardous Substance List |
   | 7303(b) | Additions to hazardous substance list |
   | 7303(c) | Deletions from hazardous substance list |

1) *The Hazardous Substance Survey Form.*

■ Section 7303(e) requires employers to complete a hazardous substance survey form for each workplace. Both plaintiff and defendant agree that this provision is preempted because Section 7303(e) is substantially identical to section 34:5A–5 of the New Jersey law which the *Hughey* court found to be preempted in the manufacturing sector. Both statutes contemplate the creation of several hazardous substances lists, including one which identifies only environmental hazards. As the court in *Hughey* stated:

> any hazardous substance listed as a workplace hazard pursuant to section 34:5A–5(a), and not listed as an environmental hazard pursuant to section 34:5A–4(a), is deemed to be one posing a specific threat to workers. It appears therefore that the primary purpose of section 34:5A–7(a) is the promotion of occupational health and safety through hazard communication. The federal Hazard Communication Standard expressly preempts section 34:5A–7(a) in the manufacturing sector.

*Hughey,* at 595.

The only difference between the two state statutes is that the Pennsylvania Right to Know Act does not provide specifically for a *workplace* hazardous substance list. Intervenors, however, contend that section 7303(e) is not preempted because the Pennsylvania definition of a hazardous substance is different from the New Jersey definition. Intervenors contend that the New Jersey statute, as demonstrated by its definition of a workplace hazard, was intended to protect primarily the employee while the Pennsylvania Act intended to protect both the employee and the public. This contention is belied by the fact that

New Jersey definition of a workplace hazard includes "any environmental hazardous substance" 34:5A–5(a). By including environmental hazards in its definition of a workplace hazard, it appears that the New Jersey Right to Know Act does not have the single minded purpose which intervenors assert. Thus section 7303(e) is preempted in the manufacturing sector. Since 7303(e) is preempted sections 7303(f), (i) and (j), sections 7305(a), (c) and (g), and sections 7307(a) and (b) are also preempted to the extent they pertain to the hazardous substance survey forms.

2) *Environmental Hazard Survey.*

Section 7303(g) also requires employers to complete environmental hazard surveys for each workplace. In *Hughey,* the court held that the New Jersey environmental hazard survey, section 34:5A–7(a), was not preempted because the reporting of environmental hazards was not a concern of the OSHA Standards. *Hughey,* at 595. Plaintiffs, however, assert that the Pennsylvania environmental hazard survey is preempted because section 7303(g) was intended to regulate occupational health and safety. This argument is based on the fact that the environmental aspects of the New Jersey law are administered by the New Jersey Department of Environmental Protection, while the environmental aspects of the Pennsylvania statute are administered by the Department of Labor and Industry. In support of their position, plaintiffs rely upon the following language from *Hughey:*

> Section 34:5A–7(b) is not preempted, since it requires reporting of environmental hazards to agencies concerned with public health and safety, a matter not governed by OSHA Standards.

*Hughey,* slip op. at 595.

In essence, plaintiffs argue that it is the designation of the state agency which is to

| | |
|---|---|
| 7303(d) | Special hazards and environmental hazards |
| 7303(i) | Authority to modify filing requirements |
| 7309 | Health and Exposure Records |
| 7311 | Trade Secrets |
| 7312 | Risk to public health |
| 7313 | Protection of employees |
| 7314 | Complaints and investigations |
| 7315 | Judicial review and enforcement |
| 7316 | False statements and intentional omissions |
| 7317 | Rules and regulations |
| 7318 | Special applications |
| 7319 | Construction of act |
| 7320 | Severability |

administer the law that is controlling. Interpretating this language, we conclude, however, that it is the purpose of the statute which is critical, not the agency selected to implement the law. Clearly section 7303(g) is concerned with the protection of the public and is not an attempt to regulate employee safety.

■ Plaintiffs further argue that the legislative intent to regulate employee safety is demonstrated by section 7303(h) which provides in pertinent part:

> (h) **Onsite testing.**—Upon the request to the department, and for good cause shown and upon consultation with the interested parties involved, the department may conduct at its expense onsite testing or use such other methods as will provide more exact information concerning the environmental hazards reported in the environmental hazards survey under subsection (g). .... The department shall not conduct onsite testing which has already been conducted by OSHA.

Plaintiffs contend that the last sentence of this section would have no meaning unless the legislature intended that the environmental hazards reported in the survey would be substances regulated and monitored by OSHA. Contrary to plaintiffs' contention, we find that section 7303(h) only attempts to prevent duplicative onsite testing and does not have the far reaching implication suggested by plaintiffs. Section 7303(g) is therefore not preempted. Likewise section 7303(h) is not preempted.

3) *Labeling.*

Pursuant to section 7304(a) suppliers of chemicals must ensure that every container is labeled in accordance with section 7306 which, in turn, provides the specific labeling requirements. In *Hughey,* the court held the New Jersey labeling provision 34:5A–14, which provided for the labeling

of both workplace and environmental hazards, was preempted "to the extent they require labeling of workplace hazards in the manufacturing sector." *Hughey,* at 595. With respect to environmental hazards, the court remanded this issue to the district court to determine whether section 34:5A–14 was an obstacle to the accomplishment of the purposes of the OSH Act. *Id.* at 596. In accordance with *Hughey,* sections 7304(a) and 7306 are apparently preempted in the manufacturing sector as they pertain to the labeling of workplace hazards. Defendants acknowledge that certain portions of sections 7304(a) and 7306 are preempted, but maintain preemption is to be determined by the customer of the employer.[6] For example, if an employer sells to a manufacturer then a label is not required, but if an employer sells to a non-manufacturer, then a label is required. Defendants draw this distinction on the basis that the labeling requirement is only preempted where its purpose is to regulate disclosure of hazard information to manufacturing employers. As defendants point out, sections 7304(a) and 7306 require that hazard information must be transmitted to both the manufacturing sector and the non-manufacturing sector, by the labeling of containers. The court in *Hughey* held that a section is preempted only "to the extent that it is expressly preempted because it regulates communication of hazards to employees in the manufacturing sector" *Hughey,* at 594. Applying this rationale, we conclude that sections 7304(a) and 7306 are not preempted to the extent they require the labeling of containers destined for non-manufacturing employers. Our conclusion is not inconsistent with the *Hughey* decision because the labeling provision of New Jersey statute requirements did not provide for the disclosure of hazard information beyond the manufacturing sector.

We do not believe that our conclusion is changed because the labeling requirement serves other purposes. Additionally, this argument was implictly rejected by the *Hughey* court when it held that the workplace survey was entirely preempted.

---

**6.** Intervenors argue that the labeling requirements are not preempted because they are not primarily tied to the concerns of employees in the manufacturing sector. This argument overlooks the fact the OSHA has promulgated standards covering labeling of workplace hazards.

The remaining issue is whether the labeling of environmental hazards is also preempted in the manufacturing sector. Plaintiffs, relying upon section 7318, argue that the labeling of environmental hazards is primarily intended to protect the employee. Section 7318 provides:

> (d) **Employers without employees.** —An employer shall not be required to comply with the requirement of sections 3(e), 5(e), 6(a)(1) through (5), 6(b) through (g), 7 and 8 for any period of time during which the employer does not have any present employees. (footnote omitted)

It is clear under this language that employers who do not have any employees are not required to abide by most of the labeling requirements. Since labeling is required only when employees are involved, this exception indicates that the primary purpose of the labeling requirement was to protect employees. Therefore we agree with plaintiffs' interpretation and conclude that sections 7304(a) and 7306 are preempted in the manufacturing sector to the extent they require manufacturing employers to label containers, and to the extent they require suppliers to label containers to be shipped to manufacturing employers.

### 4) *The Material Safety Data Sheets*

In accordance with section 7304(b) manufacturers, importers, and suppliers must ensure that material safety data sheets accompany each initial shipment. The MSDS must also be provided for each container delivered to a point within the state of Pennsylvania. Unlike the previous provisions section 7304(b) has no counterpart in the New Jersey statute. As was the case with labeling, the federal Hazard Communication Standard already provides for the development of MSDS's. 29 C.F.R. § 1910.1200(g). Therefore, sections 7304(b), (c), (d), (e), (f) and (g) are expressly preempted only to the extent they require

manufacturers, importers, and suppliers to provide a MSDS for each container to be delivered to an employer in the manufacturing sector which contains a workplace hazard.[7] As a result sections 7304(b)(3) and (4) are also preempted to the same extent. However, with respect to environmental hazards, these sections are not preempted. There is no indication that the regulation of environmental hazards by section 7304(b) was intended to promote only employee safety and neither party has argued that requiring MSDS's for environmental hazards would operate as an obstacle to the accomplishment of federal objectives. Since section 7304(b) is preempted in the manufacturing sector sections 7303(f) and (j), 7305(a), (b), (c), (d), (e) and (g), and 7307(a) and (b) are also preempted to the extent they pertain to MSDS's in the manufacturing sector.[8]

### 5) *Employer Educational Program.*

Section 7308 requires employers to provide, at least annually, an education and training program. Defendants and intervenors concede that this section is preempted. Additionally, noting that Section 7308 is substantially identical to the one provided in the Federal Hazard Communication Standard, we conclude that section 7308 is preempted. See 29 C.F.R. § 1910.1200(h)(2).

### 6) *Outreach Program.*

Section 7310(a) requires the Department of Labor and Industry to develop outreach programs to inform employees and the public about their rights under the Act and about hazardous substances. We find, however, that section 7310(a) is preempted only to the extent it applies to the disclosure of workplace hazards to employees in the manufacturing sector. Similarly, sec-

---

**7.** A workplace hazard is a substance found on the Hazardous Substance list but not found on the environmental substance list.

**8.** We recognize an apparent inconsistency in holding that *labeling* of environmental hazards is preempted in the manufacturing sector,

whereas the preparation of MSDSs for environmental hazards is not. This situation results from the fact that Section 7318(d) is limited to labeling. We do not know if this result was intended.

tion 7310(d) is preempted as it pertains to employees in the manufacturing sector.

B. *Application to employers not within the SIC Codes 20–39.*

Because the federal provisions apply only to employers within the SIC Codes 20–39, the Pennsylvania law is not preempted as to other employers. *See Hughey,* at 595. Plaintiffs argue, however, that in the event that any preemption is adjudicated, the Pennsylvania legislature intended that the entire statute be declared unconstitutional. In support of this position plaintiffs rely on § 19(d) of the Right to Know Act which provides:

> **(d) Review of preemption.**—Should Federal Government preemption be finally adjudicated and result in lessening the burden on any employer to meet the requirements of this act, it is the intent that the General Assembly reexamine this act so that all employers hereunder shall be reexamined as to requirements necessary in meeting the standards of this act so as to treat all employers fairly and equitably.

Section 19(d) states only that the General Assembly intends to *re-examine,* and not abandon the Right to Know Act, if federal preemption is adjudicated. This view finds support in Section 20 of the Right to Know Act, which specifically contemplates severability under the circumstances presented by this case.[9] We conclude that the Right to Know Act is not preempted as it applies to employers not within the SIC Codes 20–39.

C. *Severability.*

We must now look to Section 20 and Pennsylvania law to determine whether the preempted provisions may be severed from the Right to Know Act or whether the entire statute must fall. *Commonwealth, Department of Education v. First School,* 471 Pa. 471, 370 A.2d 702 (1977). The standards for determining severability under Pennsylvania law are set forth in the Statutory Construction Act:

> The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925.

Interpreting this section, the Pennsylvania Supreme Court in *Saulsbury v. Bethlehem Steel Co.,* 413 Pa. 316, 320, 196 A.2d 664, 666 (1964) stated:

> "[A] statute or ordinance may be partially valid and partially invalid, and ... if the provisions are distinct and not so interwoven as to be inseparable ... courts should sustain the valid portions." (citations omitted).

There is a strong presumption in favor of severability where a statute contains a severability clause. *Commonwealth, Department of Education v. First School, supra.*

■ Applying these principles, we find that the entire statute should not fall because the preempted provisions are not "so essentially and inseparably connected" with the non-preempted provisions. The Right to Know Act, while less comprehensive, still remains an effective means for regulating environmental hazards in the manufacturing sector and for regulating workplace and environmental hazards in the non-manufacturing sector. We also conclude that legislative intent will be advanced by severing the preempted provisions. The Act is a broad statute designed

**9.** 35 P.S. § 7320.

to protect the public and the employee by regulating environmental and workplace hazards. This purpose will not be defeated by the limited preemption which we have adjudicated.

### D. *Trade Secret Protection.*

 Plaintiffs argue that the provisions of the Right to Know Act relating to trade secrets result in a taking of plaintiff's property without due process of law because the Act does not provide for an adequate remedy against the Commonwealth of Pennsylvania. This contention can be disposed of without much discussion. The court in *Hughey* found that the trade secret provisions of the New Jersey Right to Know Act did not constitute a taking. *Hughey*, at 598. The Pennsylvania and New Jersey trade secret provisions are similar in nature and we conclude the Pennsylvania Right to Know Act does not constitute a taking. Since there has not been a taking of plaintiffs' property we need not consider plaintiffs' argument that the Act does not provide an adequate remedy against the Commonwealth.

### E. *Violation of the Commerce Clause.*

Finally, plaintiffs argue that the Right to Know Act violates the Commerce Clause because it imposes an undue burden on interstate commerce. They contend that the Right to Know Act will substantially increase the cost of goods moving in interstate commerce. To the contrary, defendants and intervenors argue that the impact on interstate commerce is merely speculative.

In *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174, 178 (1970) the Supreme Court established the following criteria for determining whether a state statute violates the Commerce Clause:

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in

relation to the putative local benefits. *Huron Cement Co. v. Detroit*, 362 US 440, 443, 4 L Ed2d 852, 856, 80 S Ct 813, 78 ALR2d 1294.

We should also note that safety regulations are entitled to "a strong presumption of validity," *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 524, 79 S.Ct. 962, 965, 3 L.Ed.2d 1003, 1007 (1959). *Kassel v. Consolidated Freightways Corp.*, 750 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981).

In the instant case, the Right to Know Act operates evenhandedly and thus the relevant inquiry is whether the burden on interstate commerce outweighs the local benefit. Plaintiffs have failed to demonstrate that the Right to Know Act will substantially burden interstate commerce. While we recognize that implementation of the Act may be costly and in that sense may burden interstate commerce, we cannot conclude that the burden outweighs the benefit. As a result we find that the Right to Know Act does not violate the Commerce Clause.

An appropriate order will be issued.