**MANUFACTURERS ASSOCIATION OF TRI–COUNTY, Appleton Papers, Inc., Shenango Incorporated, International Metals Reclamation Company, Inc., Ellwood City Forge Corporation, and McDanel Refractory Company, Appellants in No. 86–5066**

v.

**James W. KNEPPER, Jr., Secretary of the Department of Labor and Industry, the Pennsylvania Department of Labor and Industry, and the Commonwealth of Pennsylvania.**

**PENNSYLVANIA FOUNDRYMEN'S ASSOCIATION, Manufacturers Association of Erie, Manufacturers Association of York, Pennsylvania Drycleaners and Launderers Association, American Mushroom Institute, Donsco, Inc., Reading Gray Iron Castings, Inc., Washington Mold Company, Confer, Smith and Company, Inc., Unicast Company, and the Hospital Association of Pennsylvania, Appellants in No. 86–5066**

v.

**James W. KNEPPER, Jr., individually and in his official capacity as Secretary of Labor and Industry for the Commonwealth of Pennsylvania, Herbert Thieme, individually and in his official capacity as Deputy Secretary and Administration of the Department of Labor and Industry Pennsylvania American Federation of Labor-Congress of Industrial Organizations, Council 13, American Federation of State County and Municipal Employees, Pennsylvania Chapter of the Sierra Club, Delaware Valley Council for Clean Air, Philadelphia Area Project on Occupational Safety and Health, United Mine Workers of America, Local 22 of the International Association of Fire Fighters, International Association of Molders and Allied Workers, Pennsylvania Public Interest Coalition and League of Conservation Voters, Intervenors, Appellants in No. 86–5032.**

Nos. 86–5032, 86–5066.

United States Court of Appeals, Third Circuit.

Argued July 21, 1986.

Decided Sept. 12, 1986.

Robert W. Thomson, (Argued), Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for Manufacturers Ass'n of Tri-County; Appleton Papers Inc.; Shenango Inc.; Intern. Metals Reclamation Co., Inc.; Ellwood City Forge Corp. and McDanel Refactory Co.

Donald A. Tortorice, Arthur K. Hoffman, (Argued), Duane, Morris & Heckscher, Harrisburg, Pa., for Pa. Foundrymen's Ass'n; Manufacturers Ass'n of York; Hosp. Ass'n of Pa., Pa. Drycleaners and Launderers Ass'n, American Mushroom Institute; Donsco, Inc., Reading Gray Iron Castings, Inc.; Washington Mold Co.; Confer, Smith and Co., Inc. and Unicast Co.

LeRoy S. Zimmerman, Atty. Gen., John G. Knorr, III, Sr. Deputy Atty. Gen., Andrew S. Gordon, Chief Deputy Atty. Gen., Chief, Litigation Section, Allen C. Warshaw, Executive Deputy Atty. Gen., Thomas M. Crowley (Argued) Deputy Atty. Gen., Delancey W. Davis, Deputy Atty. Gen., Office of Atty. Gen., Harrisburg, Pa., for James W. Knepper, Jr. and Herbert Thieme.

Theodore M. Lieverman, (Argued), Philadelphia, Pa., for Intervenors, Pa. AFL–CIO, et al.

McDermott, Will & Emery, Washington, D.C., Bruce H. Hamill, Gen. Counsel,

Washington, D.C., for Amicus Curiae Nat. Paint and Coatings Ass'n, Inc.

Jordan Rossen, Gen. Counsel, Leonard R. Page (Member), Richard W. McHugh, Associate Gen. Counsel, International Union, UAW, Detroit, Mich., Richard H. Markowitz, Markowitz & Richman, Philadelphia, Pa., for Amicus Curiae Intern. Union, UAW.

Before: GIBBONS, WEIS, and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This is an appeal from a final summary judgment in consolidated actions challenging the constitutionality of the Pennsylvania Worker and Community Right-to-Know Act (the Act), Pa.Stat.Ann. tit. 35, §§ 7301–7320 (Purdon Supp.1986), and seeking injunctive relief against its enforcement. The plaintiffs[1] contend that the Act is preempted by the federal Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678 (1982) (OSH Act) and the Occupational Safety and Health Administration's (OSHA) Hazard Communication Standard, 29 C.F.R. § 1910.1200 (1985). The plaintiffs also argue that the Pennsylvania Act violates the commerce clause and exacts a taking of property for public use without just compensation. The defendants[2] are state officials and a state department charged with the enforcement of the Act. Certain labor unions and environmental groups were permitted to intervene[3] for the purpose of defending the constitutionality of the Act. All parties moved for summary judgment. The district court, relying extensively on this court's opinion in *New Jersey State Chamber of Commerce v. Hughey,* 774 F.2d 587 (3d Cir.1985), which dealt with the New Jersey Worker and Community Right-to-Know Act (New Jersey Right-to-Know Act), rejected most of the plaintiffs' challenges to the constitutionality of the Act.[4] The court held, however, that subsections 7303(e), (f), (i), and (j), subsections 7305(a), (c), and (g), and subsections 7307(a) and (b) were expressly preempted in the manufacturing sector[5] by the OSH Act "to the extent they pertain to hazardous substance survey forms." *Manufacturers Ass'n of Tri-County v. Knepper,* 623 F.Supp. 1066, 1072 (M.D.Pa.1985). Moreover, the district court also held that sections 7304(a) and 7306 of the

1. The plaintiffs include the following: Manufacturers Association of Tri-County, Appleton Papers, Inc., Shenango Incorporated, International Metals Reclamation Company, Inc., Ellwood City Forge Corporation, McDanel Refractory Company, Pennsylvania Foundrymen's Association, Manufacturers Association of Erie, Manufacturers Association of York, Pennsylvania Drycleaners and Launderers Association, American Mushroom Institute, Donsco, Inc., Reading Gray Iron Castings, Inc., Washington Mold Company, Confer, Smith and Company, Inc., Unicast Company, and the Hospital Association of Pennsylvania.

2. The defendants are James W. Knepper, Jr., Secretary of the Department of Labor and Industry, Herbert Thieme, Deputy Secretary for Administration of the Department of Labor and Industry, the Pennsylvania Department of Labor and Industry, and the Commonwealth of Pennsylvania.

3. The intervenors include the following: Pennsylvania American Federation of Labor-Congress of Industrial Organizations, Council 13, American Federation of State, County, and Municipal Employees, Pennsylvania Chapter of the Sierra Club, Delaware Valley Council for Clean Air, Philadelphia Area Project on Occupational Safety and Health, United Mine Workers of America, Local 22 of the International Association of Firefighters, International Association of Molders and Allied Workers, Pennsylvania Public Interest Coalition, and the League of Conservation Voters.

4. The district court opinion is reported. *See* Manufacturers Ass'n of Tri-County v. Knepper, 623 F.Supp. 1066 (M.D.Pa.1985).

5. See United Steelworkers of America v. Auchter, 763 F.2d 728, 738 (3d Cir.1985) (duly promulgated OSH Act standard, which governs employees in the manufacturing sector, expressly preempts state law in that sector).

Act, requiring labeling of containers of hazardous substances, were expressly preempted to the extent that these sections require manufacturing employers to label containers used in their place of business and to the extent that they require suppliers to label containers shipped to employers or customers in the manufacturing sector. *Knepper*, 623 F.Supp. at 1073. Additionally, the court held that section 7308, which requires employers to provide an education and training program for employees, was expressly preempted in the manufacturing sector, and that subsection 7310(a), which requires the Pennsylvania Department of Labor and Industry (the Department) to conduct outreach programs to educate employees and the public, was expressly preempted insofar as it pertains to the disclosure of workplace hazards[6] to employees in the manufacturing sector. *Knepper*, 623 F.Supp. at 1074. Similarly, the court held that subsection 7310(d), permitting employers to furnish Hazardous Substance Fact Sheets to employees, was preempted in the manufacturing sector. *Knepper*, 623 F.Supp. at 1075. Finally, the court held that subsections 7304(b), (c), (d), (e), (f), and (g), requiring manufacturers, importers, and suppliers to furnish Material Data Safety Sheets (MSDS) with shipments were expressly preempted insofar as they require that MSDS be furnished for shipments of hazards-workplace substances destined for manufacturing-sector customers.

The plaintiffs and the intervenors appeal. The defendants filed a notice of appeal, but did not pursue it. As appellees, the defendants defend the district court's decision to the extent that it upholds the constitutionality of the Act. The intervenors contend that the district court erred in holding the hazard survey requirement, the labeling requirement, the MSDS requirement, and the education and training requirement preempted in the manufacturing sector. The plaintiffs defend the district court's preemption rulings to the extent the court

found preemption. They contend, however, that the court erred in finding the labeling and MSDS requirements preempted only to the extent they apply to users of hazardous substances in the manufacturing sector; the plaintiffs argue that preemption should be broader. They also contend that, once the district court held that the Act was preempted in the manufacturing sector, *see Knepper*, 623 F.Supp. at 1075, the court should have held the Act entirely invalid because as a matter of Pennsylvania law the preempted provisions of the Act were not severable. Some plaintiffs also contend that the district court erred in granting summary judgment dismissals of their commerce clause and taking contentions because there were genuine issues of material fact as to those contentions.

We hold that the district court properly applied the Pennsylvania law of severability, and correctly ruled that there was no OSH Act preemption outside the manufacturing sector, that the education and training requirement was preempted as to employees in the manufacturing sector, and that the Department Outreach program was preempted in that sector. We also hold that the district court erred in holding the hazard survey, labeling, and MSDS requirements totally preempted in the manufacturing sector. Finally, we conclude that the court properly granted summary judgment on the commerce clause and taking clause contentions. Thus we affirm in part and reverse in part.

### I.

### Preemption

The Pennsylvania Act is substantially similar although not identical to the New Jersey Worker and Community Right to Know Act, N.J.Stat.Ann. §§ 34:5A–1 to 31 (West Supp.1986), which we addressed in *New Jersey State Chamber of Commerce*

---

**6.** The district court coined the term "workplace hazard," and defined it as "a substance found on the Hazardous Substance list but not found on the environmental substance list." 623 F.Supp. at 1074 n. 7.

*v. Hughey*, 774 F.2d 587 (3d Cir.1985). Thus that decision is generally controlling. In *Hughey* we held that a state right-to-know act, requiring the collection and dissemination of information with respect to hazardous substances was expressly preempted only to the extent that the state act pertains to issues that are addressed by a duly promulgated OSHA standard. *Id.* at 592. We held, further, that a state right-to-know act was impliedly preempted only to the extent that it is impossible to comply with both the state law and the federal standard, or to the extent that the state law serves as an obstacle to the accomplishment of the congressional purposes served by the OSHA standard. *Id.* at 594. Finally, we held that the severability of a state law that was partially preempted was determined by the law of that state. *Id.* at 596. With these general principles in mind, we turn to the parties' contentions.

### A.

### Severability

■ The plaintiffs' severability contentions need not detain us long. The Act contains an express severability clause:

> The provisions of this act are severable. If any provision of this act or its application to any person or circumstances [is] held invalid, the invalidity shall not affect other provisions or applications of this act which can be given effect without the invalid provision or application.

Pa.Stat.Ann. tit. 35, § 7320. This broad language leaves no room for speculation as to the intention of the Pennsylvania legislature with respect to severability. Indeed the language of section 7320 is reinforced in subsection 7319(b). This subsection discloses that the Pennsylvania legislature was fully aware of the possible preemptive effects of federal legislation, for it provides:

> *Construction with Federal law.—*
> This act is to be read in conjunction with any provision of Federal law providing for the identification, labeling or providing of information concerning hazardous substances and is intended to supplement such Federal regulation in the interests of protecting the health and safety of citizens of the Commonwealth.

*Id.* Thus the subsection suggests that the legislature intended the Act to be operative to the extent that federal law permits, and that intention is expressly stated in section 7320.

Despite the clear language of section 7320 and subsection 7319(b), however, the plaintiffs urge that those provisions should be disregarded in light of subsection 7319(d). Subsection 7319(d) reads:

> *Review of preemption.—*
> Should Federal Government preemption be finally adjudicated and result in lessening the burden on any employer to meet the requirements of this act, it is the intent that the General Assembly reexamine this act so that all employers hereunder shall be reexamined as to requirements necessary in meeting the standards of this act so as to treat all employers fairly and equitably.

*Id.* § 7319(d). The plaintiffs seize on subsection (d) as an expression by the Pennsylvania legislature of the intention that if any employer is exempted from coverage by the preemptive effect of federal law, all other employers must be preempted as well. The language relied upon cannot be read to convey such a meaning. It is unclear why all employers in the construction or service sectors of the economy would be treated unfairly or inequitably by virtue of an exemption applicable to manufacturing sector employers with which they do not compete. More fundamentally, it is perfectly clear that it is the General Assembly, not the courts, that must reexamine the Act to determine if further changes are required in the interest of fairness and equity. The role of the courts is delineated with unmistakable clarity. The Act is to be applied to all persons or circumstances to which it can lawfully be applied. *See id.* § 7320. The legislature's specific direction to that effect in this Act is consistent with its more general direction in the rules of

constitutional construction of Pennsylvania's law. Those general rules establish a presumption of severability. *See* 1 Pa. Cons.Stat.Ann. § 1925 (Purdon Supp.1986).

### B.

### Hazardous Substance Survey Provisions

As noted above, the district court held that subsection 7303(e) of the Act was preempted in the manufacturing sector by the OSHA standard applicable to employers in that sector. Subsection 7303(e) provides:

*Hazardous substance survey form.*— Every employer shall, upon a form supplied by the department, fill out a hazardous substance survey for each workplace, providing information on the hazardous substances present during the prior year. A listing of the hazardous substances shall be posted by the employer as required by section 7[307]. Upon the written request of any person in Pennsylvania, the department shall require the employer to forward a copy of the completed survey form to the department within 20 days. The department shall, in turn, keep a copy of the survey form on file, and shall immediately transmit a copy of the form to the original requestor. The employer shall update the hazardous substance survey form for each workplace every two years.

Pa.Stat.Ann. tit. 35, § 7303(e). This subsection appears as part of a general provision that directs the Department to compile and maintain a list of hazardous substances. The Department's list includes all substances found on the latest compilation or issue of eleven designated lists prepared by other governmental and nongovernmental agencies concerned with environmental, health, and safety issues. One of the eleven designated lists is the OSHA list of toxic and hazardous substances found in 29 C.F.R. § 1910.1000–.1500 (Subpart Z). *See* Pa.Stat.Ann. tit. 35, § 7303(a)(5). The Department's list, relying on ten other source lists, is, however, more inclusive than OSHA's list because the Department's lists refer to environmental and general health hazards, not merely to workplace health and safety hazards. Moreover the Department is directed to include "any other substance or mixture designated . . . as hazardous because of its known or probable adverse human or environmental effect." *Id.* § 7303(a). Thus the statutory purpose of the hazardous substance list is broader than workplace safety, which is the sole concern of the OSH Act.

The Act requires that the Department create separate lists of those hazardous substances that shall be considered "special hazardous substances." *Id.* § 7303(d). These substances are designated by the Department as special hazards because their "particular toxicity, tumorigenicity, mutagenicity, reproductive toxicity, flammability, explosiveness, corrosivity or reactivity poses a special hazard to health and safety." *Id.* § 7302. The Act also requires that the Department designate those hazardous substances that shall be considered "environmental hazards." *Id.* § 7303(d). Environmental hazards are defined as those hazards that "because of [their] particular or extreme properties, pose[ ] a danger if released into the environment." *Id.* § 7302. Thus the Department must prepare three lists: an all-inclusive hazardous substance list, a special hazardous substance list, and an environmental hazardous substance list. All three lists must be transmitted by the Department to every employer subject to the Act. *Id.* § 7303(a), (d).

Subsection 7303(e) requires employers to complete hazardous substance surveys. The survey asks for information on any hazardous substances, as defined by the Department's all inclusive hazardous substance list, that were present in the workplace during the prior year. The surveys necessarily disclose workplace hazards, and these hazards, in the manufacturing sector, include those hazards covered by subpart Z of OSHA's Hazard Communication Standard. The survey also discloses the presence of other hazardous substances that may present environmental or general health hazards, but not workplace hazards.

Under subsection 7303(f) employers must provide emergency health and safety agencies with these surveys and any relevant environmental hazard information. *Id.* § 7303(f). Section 7303(f) states:

*Access of police, fire and emergency response agencies.—*

Upon the request of a local police, fire or emergency response agency, within whose jurisdiction an employer falls, an employer shall provide a copy of its latest hazardous substance survey.... The employer shall further provide, upon the request of said agency, all relevant and available information concerning any environmental hazards pertaining to the workplace in question.

*Id.*

 The requirements in the Act that the Department compile hazardous substance, environmental hazard, and special hazard lists and transmit those lists to employers are virtually identical to those in sections 34:5A–4(a) (requiring development of environmental hazardous substance list), 34:5A–5(a) (requiring development of workplace hazardous substance list), 34:5A–5(b) (requiring development of special health hazard list), 34:5A–5(d) (requiring development of workplace hazardous substance fact sheet), and 34:5A–8 (requiring transmittal to employers of hazardous substance fact sheet based on items in employers' workplace survey) of the New Jersey Right-to-Know Act. In *Hughey,* we held that sections 34:5A–4 and 5 were not preempted because the New Jersey Act depends upon an entirely different hazard identification scheme than does the federal hazard disclosure standard. 774 F.2d at 594–95. *See also* C.F.R. § 1910.1200(d), (e)(1)(i). The same is true of the Pennsylvania Act. The Pennsylvania standard relies on the Department to identify hazardous substances whereas the federal standard relies primarily on the original manufacturer or importer. *See* 29 C.F.R. § 1910.1200(d). Therefore the subsections of the Pennsylvania Act, 7303(a) and 7303(d), authorizing the development of the hazardous substance, the environmental

hazard, and the special hazard lists are not preempted. While some of the plaintiffs urge that the requirement that the Department transmits these hazardous substance lists to manufacturing-sector employers should be preempted, the district court held otherwise, *see* 623 F.Supp. at 1071–72 n. 5, and that holding is consistent with *Hughey. See* 774 F.2d at 595 n. 4 (section 34:5A–8, which requires the New Jersey Department of Health to provide employers with a fact sheet for each hazardous substance reported, held not to be preempted).

In *Hughey* this court also considered the requirement in the New Jersey Right-to-Know Act that employers complete hazardous substance surveys. The New Jersey statute provides separately for workplace hazard surveys, N.J.Stat.Ann. § 34:5A–7(a), and environmental hazards surveys, *id.* § 34:5A–7(b). We held that because the primary purpose of the workplace hazard surveys was the promotion of occupational health and safety through hazard communication, section 34:5A–7(a) was preempted in the manufacturing sector by OSHA's Hazard Communication Standard. *See* 774 F.2d at 595. However, because we found that the environmental hazard surveys required by 34:5A–7(b) had a different purpose, we held that the environmental hazard and the related filing and disclosure provisions of the New Jersey Act were not preempted. *Id.*

 In the instant case the district court, relying on *Hughey,* held that section 7303(e) of the Pennsylvania Act, which requires employers to complete hazardous substance surveys, was entirely preempted because that provision is virtually identical to section 34:5A–7(a) of the New Jersey Act. *See Knepper,* 623 F.Supp. at 1072. This holding misreads both the Pennsylvania Act and the *Hughey* opinion. Unlike section 34:5A–7(a), which pertains only to workplace hazards—the sole concern of the OSHA standard—section 7303(e) deals with a broad range of hazards, as is illustrated by the comprehensiveness of the Pennsylvania hazardous substance list. Although this list does include substances found on

OSHA's list, it includes many other substances as well. *See* Pa.Stat.Ann. tit. 35, § 7303(a). Moreover substances on the OSHA list may pose hazards not only to workers, but also to the environment and public at large if they escape, and to police, fire, and emergency response personnel called to a place of business. By exempting all manufacturing-sector employers from the requirement that they make hazardous substance surveys, the district court relieved them of the obligation, imposed in subsection 7303(f), that such surveys be made available to public safety agencies and of the requirement that they be made available to interested members of the public through the Department. The more relevant holding in *Hughey* is the conclusion that section 34:5A–7(b) of the New Jersey Act, which requires completion and distribution of environmental hazardous substance surveys, is not preempted. *Hughey*, 774 F.2d at 594 n. 4. Thus the requirements in subsection 7303(e) and 7303(g) that employers make hazardous substance surveys and environmental hazardous surveys, furnish them to the public and employees through the Department on request, *see* Pa.Stat.Ann. tit. 35, § 7305(a) and (c), and the requirement in subsection 7303(f) that employers furnish such surveys to public safety agencies on request are not preempted.

We recognize the substantial similarities between the manner in which the New Jersey and Pennsylvania statutes deal with hazardous substance surveys. We also recognize, however, that the statutes are drawn somewhat differently, and we conclude that the differences are significant. Unlike section 34:5A–5(a) of the New Jersey Act, section 7303(e) of the Pennsylvania Act does not have as its primary purpose the promotion of occupational health and safety through hazard communication. Therefore it is not expressly preempted in the manufacturing sector by the federal Hazard Communication Standard.

■ One provision in section 7303(e), however, raises an express preemption question. The requirement that "[a] listing of hazardous substances shall be posted by the employer as required by section 7[307]." Pa.Stat.Ann. tit. 35, § 7303(e). Section 7307 requires that every employer post in every workplace "[l]ists of all hazardous substances and special hazardous substances found in the workplace and all environmental hazards discharged therefrom." *Id.* § 7307. Section 7307 deals only with notification to employees of workplace hazards, and the posting requirement thus is a hazard communication standard. In the manufacturing sector, therefore, it is preempted by the OSHA Hazard Communication Standard. *See Hughey*, 774 F.2d at 595. However, because the Act is severable, and the hazard survey requirement serves purposes other than hazard communication to employees, the hazard survey requirement applies even in the manufacturing sector, while the posting requirement does not.

■ Our holding that section 7303(e) is expressly preempted by the OSH Act only to the extent that it requires posting by employers of hazardous substances found in the workplace is not dispositive, for although the district court did not address implied preemption, such a holding would afford a separate ground for affirmance. We have examined the summary judgment with this alternative ground in mind, and we conclude that manufacturing-sector employer compliance with both the hazardous substance survey provision and the OSHA Hazardous Substance Communication Standard is possible and that such compliance would not obstruct the accomplishment of the purposes served by the OSHA standard. The plaintiffs' complaints about the burdens imposed by separate state hazardous substance lists is essentially the same as the complaint that we rejected in *Hughey*. *See* 774 F.2d at 593–94.

### C.

### Labeling Provisions

Section 7304(a) requires that suppliers of chemicals ensure that every container is labeled in accordance with section 7306.

Pa.Stat.Ann. tit. 35, § 7304(a). The latter section specifies what labels are required and imposes on employers a separate obligation to ensure that each container in the workplace is appropriately labeled. *See id.* § 7306. The plaintiffs defend the district court's holding that sections 7304(a) and 7306 were preempted in the manufacturing sector to the extent that they require manufacturing employers to label containers and to the extent they require suppliers to label containers shipped to manufacturing employers. Their defense of the ruling with respect to suppliers is somewhat puzzling because the effect of this ruling is to complicate matters for suppliers who apparently would have to become knowledgeable about the economic sector in which their customers operate and provide separate labels for customers in the manufacturing sector. Pennsylvania's labeling requirements include everything that the OSHA standard mandates, and so far as the summary judgment record discloses, it is possible to include both the OSHA information and the additional Pennsylvania information on the same label. Moreover, as we point out in the discussion of the hazardous substance survey, the Pennsylvania Act addresses broader concerns than workplace safety. The presence of the required labels on all hazardous-substances containers will facilitate employer compliance with general hazardous substance survey obligations, *see id.* § 7303(e), and employer compliance with the more specific environmental hazard survey obligations respecting substances emitted, discharged, or disposed from the workplace, *see id.* § 7303(g). Thus it cannot be said that the primary purpose of the supplier's labeling requirement, even with respect to manufacturing-sector customers, is hazard communication to employees.

█ The district court, relying on section 7318(d), construed the supplier-labeling requirement to be applicable only when em-

ployees are involved. Section 7318(d) exempts employers, for any period of time during which they have no present employees, from certain requirements of the Act.[7] The sections from which such employers are exempted deal primarily with employers' obligations to communicate information to their own employees. We do not read it, as apparently the district court did, to provide an exemption for suppliers selling to customers without employees. The supplier is obliged to label containers of any chemical delivered or produced in Pennsylvania. *Id.* § 7304(a). Obviously delivery to a consumer other than employers is covered. Such a construction of the Act is consistent with its public safety and environmental purposes. In *Hughey* we held that "[t]he Hazard Communication Standard does not expressly preempt section 34:5A–14 to the extent that it requires containers of environmental hazardous substances to be labeled." 774 F.2d at 596. That holding, dealing with the New Jersey Act, controls on the issue of express preemption to the extent that an obligation is imposed by the Pennsylvania Act on suppliers to include label information in addition to that required by the federal Hazard Communication Standard. In *Hughey* we also addressed the question of implied preemption. The New Jersey labeling requirement imposed on employers an obligation not only to label containers and preserve labels, but also to label pipelines. Affidavits in the *Hughey* summary judgment record raised material issues of disputed fact as to whether the New Jersey requirement for environmental labeling by employers in the manufacturing sector would lead to confusion of workers, and thereby obstruct the purposes of the federal standard. *See* 774 F.2d 596. The record in this case is different, at least with respect to suppliers. Section 7304(a) does not deal with pipeline labeling. There is no suggestion that suppliers' compliance with Pennsylva-

---

7. Section 7318(d) provides:

*Employers without employees.—*
An employer shall not be required to comply with the requirements of sections [7303(e) ], [7305(e) ], [7306(a)(1) through (5) ], [7306(b) through (g) ], [7307] and [7308] for any period of time during which the employer does not have any present employees.
*Id.* § 7318(d).

nia's labeling requirements would confuse manufacturing-sector employees. Thus we hold that section 7304(a) is not impliedly preempted by the federal Hazardous Communication Standard, even with respect to containers supplied to manufacturing-sector employers.

■ Section 7306, to which section 7304(a) cross-references, specifies the content of the labels. To the extent that section 7306 is thus incorporated in section 7304(a), it binds suppliers. Section 7306 imposes separate obligations, however, on employers, both with respect to containers, *see* Pa.Stat.Ann. tit. 35, § 7306(a), and with respect to pipelines, *see id.* § 7306(c). Like the New Jersey Right-to-Know Act, these employer obligations arguably have a dual purpose of hazard communication to employees and hazard communication to firefighters, police officers, and members of the community at large. The exemption in section 7318(d) of the Pennsylvania Act from compliance with most of section 7306 for employers not having any present employees, suggests that hazard communication to employees is the chief purpose of the employers' obligations. Moreover section 7318(d) exempts employers, who do not have employees, from the workplace notice requirement in section 7307, which we have held to be expressly preempted by the federal Hazard Communication Standard in the manufacturing sector. Consistent with that holding, we hold that the provisions in section 7306 obliging employers to label containers and pipelines with display labels are preempted for the manufacturing sector.[8]

### D.

### Material Safety Data Sheets Provisions

Subsection 7304(b) of the Act obliges all suppliers of hazardous substances in Penn-

sylvania to provide MSDS to all purchasers of such substance with the initial shipment. *Id.* § 7304(b)(1). Employers are also obliged to obtain and maintain MSDS from suppliers. *Id.* § 7304(b)(3). The MSDS must contain the information specified in subsection 7304(c) which is more inclusive than the Material Safety Data Sheets required under the federal Hazard Communication Standard. The subsection is qualified, however, by the provision that "[n]otwithstanding the above, any MSDS which contains the information requested in paragraphs (1) and (2), and which otherwise contains the information required by 29 C.F.R. § 1900.1200(g)(2) [sic—§ 1910.-1200(g)(2) intended], as of November 25, 1983, shall be considered to have met the requirements of this section." Pa.Stat. Ann. tit. 35, § 7304(c). The reference here is to the provision in the federal Hazard Communication Standard requiring suppliers of chemicals to develop material safety data sheets for each hazardous chemical they supply. Thus compliance with the federal requirement for a material safety data sheet satisfies the Pennsylvania Act if it also contains:

(1) The chemical name, the Chemical Abstracts Service number, the trade name, common names and any other names under which said substance is regulated by another State or Federal agency.

(2) The chemical name, common name and Chemical Abstracts Service number of every chemical contained in the substance which comprises 3% or more of the substance except that hazardous substances shall be listed if they comprise 1% or more of the substance, and all special hazardous substance which comprise 0.01% or more of the substance shall be listed.

---

8. That holding does not apply to subsection 7306(a)(6) which provides:

The employer shall ensure that each container of hazardous substance, hazardous mixtures or chemicals leaving the workplace is labeled, tagged or marked with the appropriate information required in paragraphs (1), (2), (3), or (4) [of section 7306(a)].

The exemption in section 7318(d) does not apply to subsection 7306(a)(6). Thus all manufacturers, even those without employees, must comply with the labeling requirements when they act as suppliers.

*Id.* The federal Hazard Communication Standard already requires the disclosure of chemical and common names. *See* 29 C.F.R. § 1910.1200(g)(2)(i)(B), (C)(1), and (C)(2). Thus the only substantive difference between the Pennsylvania and federal requirements appears to be Pennsylvania's requirement that chemical abstract service numbers be included.

The district court, apparently relying on the fact that separate hazardous substance and environmental hazards lists are required by section 7303(d), defined workplace hazards as substances found on a department hazardous substance list but not on the environmental hazards list. *Knepper*, 623 F.Supp. at 1074 n. 7. The court held that MSDS must be supplied, even to manufacturing sector purchasers, if they included information on environmental hazards, but not if the substances in question would present only workplace hazards. Thus interpreted, the court held that the requirement that MSDS be supplied to manufacturing-sector purchasers was expressly preempted by the OSH Act. *Id.* at 1074. Consequently, as in the case of labeling requirements, the court's holding requires suppliers to prepare several different kinds of MSDS, depending on whether the substance is both a workplace and an environmental hazard and whether the customer is an employer in the manufacturing sector. The district court's holding with respect to MSDS, insofar as it applies to the obligation of suppliers to develop and supply such sheets, suffers from the same defects as does the holding with respect to labeling. The MSDS serve purposes other than hazard communication to workers. They can facilitate the preparation of hazardous-substance surveys, which will be useful to public safety officials, and environmental-hazard surveys, which will be useful to agencies concerned with emissions and discharges. Since we cannot say that the preparation and distribution of MSDS has as its primary purpose the communication of hazards to employees, that requirement is not expressly preempted by the OSH Act, even in the manufacturing sector. As to implied preemption, any danger that the Pennsylvania Act makes compliance with the federal act impossible or that the Pennsylvania Act would serve as an obstacle to the accomplishment of the OSH Act's objectives is obviated by the provision in section 7304(e) making compliance with the federal Hazard Communication Standard requirement and the Pennsylvania requirement virtually coextensive. There is no suggestion in the record that the addition of chemical abstract service numbers would confuse employees in the manufacturing sector. Thus we hold that all suppliers covered by the Act must furnish MSDS required by section 7304, even to customers in the manufacturing sector. Moreover, since those sheets serve purposes other than hazard communication, the obligation of employers to obtain and maintain such sheets, *see id.* § 7304(b)(3), is not preempted. Likewise the provision in section 7303(f), requiring employers to make copies of MSDS available to local police, fire, or emergency response agencies is not preempted. The requirements in section 7303(j) that the Department retain at least one MSDS for each hazardous substance, and the requirement in section 7305(a) that the Department make MSDS available to local public safety agencies, are also not preempted.

Employers' obligations with respect to MSDS present different considerations. Subsection 7305(c), (d), and (e), and subsection 7307(b) deal with hazard communication to employees of the contents of MSDS and of Hazard Safety Factor Sheets prepared by the Department. These communication provisions fall directly within the subject matter of the federal Hazard Communication Standard, and under *Hughey* they must be held to be expressly preempted in the manufacturing sector. The provisions appear to have no other purpose than the promotion of occupational health and safety through hazard communication. To the extent that workers in that sector are also interested in environmental and public health and safety issues outside the workplace, that interest is recognized elsewhere in the Pennsylvania Act by the provision

for public access to MSDS or Hazardous Substance Fact Sheets. *See id.* § 7305(g).

### E.

### Employer Educational Programs

■■■ The district court held that section 7308, which requires employers to provide an education and training program, was preempted in the manufacturing sector by the virtually identical requirement in the federal Hazard Communication Standard. *See Knepper,* 623 F.Supp. at 1074; *see also* 29 C.F.R. § 1910.1200(h)(2). We agree that this requirement is preempted insofar as it requires employers in the manufacturing sector to conduct educational programs with respect to workplace hazards. It is not clear, however, that the Pennsylvania Act requires educational programs with respect to environmental as distinguished from workplace hazards. If the Pennsylvania authorities so construe the Act, the provision that employees be educated as to environmental hazards would not be preempted.

### F.

### Department Outreach Program

■■■ Section 7310 requires the Department to develop outreach programs to inform employees and the public of their rights under the Act and to educate employers, employees, and the public about hazardous substances. The district court held that this section was preempted only to the extent that it applies to the disclosure of workplace hazards to employees in the manufacturing sector. We agree that section 7310 is preempted by the OSH Act in the manufacturing sector to this extent only because the purpose of such an outreach program is hazard communication.

### II.

### Constitutional Issues

One group of plaintiffs, who filed the Manufacturers Association of Tri-County complaint, urges that while the preemption issues are strictly legal, and resolvable on cross-motions for summary judgment, the counts in their complaint alleging an unconstitutional burden on interstate commerce and an unlawful taking of property without just compensation raise factual issues which are not resolvable as a matter of law. Thus, they urge, the district court should not have granted summary judgment on those counts.

This contention was not made to the district court, and the parties in that court proceeded on the assumption that the motion for summary judgment applied to the entire complaint. Thus the question before us is not whether these plaintiffs were deprived, procedurally, of the opportunity to make a factual record, but whether given the allegations in their complaint and the supporting affidavits on which they rely, they have stated a claim upon which relief could, as a matter of law, be granted. The plaintiffs raise two constitutional challenges: a fifth amendment taking challenge and an article I commerce clause challenge.

■■■ The district court addressed both challenges. Noting that in *Hughey,* 774 F.2d at 598, this court upheld the virtually identical provisions of the New Jersey Right-to-Know Act, the court held that the Pennsylvania Act did not constitute a taking. *See Knepper,* 623 F.Supp. at 1076. On this issue *Hughey* controls. The complaint fails to state a claim under the fifth amendment taking clause. As to the commerce clause, the district court applied the criteria for determining dormant commerce clause challenges announced in *Pike v. Bruce Church, Inc.:*

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden on such commerce is clearly excessive in relation to the putative local benefits.

397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). The complaint does not allege discrimination against interstate commerce and the affidavits that the plaintiffs filed in support of their commerce

clause challenge fail to identify any burdens on interstate commerce that would be excessive in relation to the local health, safety, and environmental interests served by the Pennsylvania Act. Thus we agree with the district court that both the constitutional challenges are deficient as a matter of law.

### III.

### Conclusion

The judgment of the district court will be affirmed insofar as it upholds the Act outside the manufacturing sector. It will be affirmed in part and reversed in part insofar as it holds that the Act is preempted in the manufacturing sector, and the case will be remanded for the entry of a judgment consistent with this opinion.